## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KVAERNER OILFIELD PRODUCTS, | § | |
| INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0992 |
| | § | |
| COOPER CAMERON | § | |
| CORPORATION, | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

This case is before the Court on the Motion to Confirm Arbitration Award ("Motion to Confirm") [Doc. # 16] filed by Cooper Cameron Corporation ("Cooper Cameron") and the Motions to Vacate Arbitration Award ("Motion to Vacate") [Docs. # 1 and # 27] filed by Kvaerner Oilfield Products, Inc. ("Kvaerner").[1]  Cooper Cameron filed its Opposition [Doc. # 36] to Kvaerner's Motion to Vacate, Kvaerner filed a Reply [Doc. # 37], and Cooper Cameron filed a Reply [Doc. # 39].[2]  Based on its consideration of the record in this case and the application of the highly deferential

---

[1]Since the filing of this civil action, Kvaerner has changed its name to "Aker Kvaerner Subsea, Inc." and Cooper Cameron has changed its name to "Cameron International Corporation."

[2]Kvaerner filed a Motion for Leave to File Sur-Reply [Doc. # 41].  The Court grants the motion and has considered the Sur-Reply.

standard of review for arbitration awards, the Court **grants** Cooper Cameron's

Motion to Confirm and **denies** Kvaerner's Motion to Vacate.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Cooper Cameron is the owner of United States Patent No. 6,039,119 ("the '119

Patent").  The '119 Patent covers a subsea oil well completion system that uses a

horizontal "Christmas tree" that Cooper Cameron calls a "spool tree."  The claimed

invention uses a lateral (or horizontal) production port and "closure members" above

the lateral production ports that are retrievable through the BOP (blowout preventer)

bore, so that the closure members do not have to be removed before the BOP is

installed.  Kvaerner markets a similar product called a "Side Valve Tree" that Cooper

Cameron claimed infringed the '119 Patent.

In connection with prior patent infringement litigation between the parties,

Kvaerner conceded infringement of Claim 1 of the '119 patent.   Nonetheless,

Kvaerner asked the Court to construe the term "spool tree" to mean a tree body

without any internal valves.   The Court noted that there was "no dispute that

Kvaerner's Side Valve Tree infringed the 'spool tree' . . . limitations (even under the

construction Kvaerner proposes)."   *See* Memorandum and Order [Doc. # 311] in

*Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.*, Civil Action No. H-97-0155,

p. 7.  The Court found that the claim construction was relevant to other issues in the

case, however, and after full consideration of the patent and relevant materials, construed the term "spool tree" to mean "a tree having no internal valves." *See id.* at 39.

After the patent infringement litigation between Cooper Cameron and Kvaerner regarding the '119 Patent had been ongoing for several years, the parties settled that lawsuit by entering into a Patent License Agreement (the "License Agreement") on May 30, 2003. Pursuant to the License Agreement, Cooper Cameron granted to Kvaerner a nonexclusive license to "make, use, import, export, offer for sale, sell, lease and/or otherwise dispose of" products covered by the '119 Patent. *See* License Agreement, Exh. H to Motion to Vacate, ¶ 2.1. Kvaerner was required to pay a lump sum royalty for past infringing sales and an ongoing royalty for future sales of "Licensed Products." *See id.*, ¶¶ 3.3, 3.4. The License Agreement defines "Licensed Products" as "any horizontal tree assembled by or for Kvaerner . . . wherein the use, offer for sale, sale, manufacture, importation or export of the product by Kvaerner . . . in a Licensed Territory would, whether directly or indirectly (e.g., through contribution or inducement), but for the rights and license granted herein, constitute an infringement" of a Cooper Cameron patent. *See id.*, ¶ 1.2.

The License Agreement contains a dispute resolution provision, requiring arbitration of "any disputes, controversies, or differences that may arise from, under,

out of or in connection with the License Agreement, including but not limited to the identity of Licensed Products." *See id.,* ¶ 10.5.   After Kvaerner stopped paying royalties under the License Agreement, a dispute arose between the parties regarding whether Kvaerner continued to owe royalties.   The parties submitted the dispute to binding arbitration.   The arbitrator issued a decision on liability in January 2005, holding that Kvaerner breached its royalty payment obligations under the License Agreement. *See* January 2005 Arbitration Award, Exh. B to Motion to Vacate, p. 24. The arbitrator ordered Kvaerner to pay royalties, to produce documents from which an accounting could be conducted to determine the amount of royalties due, and to pay Cooper Cameron's costs and attorneys' fees in an amount to be determined. *See id.*

Kvaerner filed its original Motion to Vacate Arbitration Award [Doc. # 1] on March 23, 2005.  Cooper Cameron moved to dismiss, arguing that Kvaerner's motion was premature because the arbitration proceeding was not yet completed.  The Court agreed and administratively closed this case until the arbitration was concluded. *See* Hearing Minutes and Order [Doc. # 13].

Following the completion of an accounting which took almost two years, the arbitrator issued an Order in January 2007 requiring Kvaerner to pay additional royalties to Cooper Cameron, and to pay all costs and attorneys' fees incurred by

Cooper Cameron in connection with the accounting procedure.  *See* January 2007 Order, attached as an exhibit to Cooper Cameron's Motion to Confirm [Doc. # 16], p. 14.  On April 9, 2007, the arbitrator issued his Final Arbitration Award stating that he had "completed all of the duties required of [him] during this Arbitration."  *See* Final Arbitration Award, Exh. F to Motion to Vacate.

Cooper Cameron filed a Motion to Reactivate this administratively closed proceeding [Doc. # 15], and the Court ordered the case reinstated on the Court's active docket [Doc. # 17].  Cooper Cameron filed its Motion to Confirm [Doc. # 16] and Kvaerner filed its Motion to Vacate [Doc. # 27].  The motions have been fully briefed and are now ripe for decision.

## II.   STANDARD OF REVIEW OF ARBITRATION AWARD

"Judicial review of an arbitration award is 'exceedingly deferential.'" *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, __ F.3d __, 2007 WL 1430223 *2 (5th Cir. May 16, 2007) (citing *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004)).  An arbitration award will be vacated "only on very narrow grounds, and federal courts must defer to the arbitrator's decision when possible." *Id.* (internal quotations and citations omitted).

The Federal Arbitration Act lists four limited grounds for vacating an arbitration award: (1) the award was procured through fraud; (2) the arbitrator was

corrupt; (3) the arbitrator engaged in misconduct that prejudiced one party's rights; and (4) the arbitrator exceeded his power.  *See* 9 U.S.C. § 10(a); *Kergosien*, 390 F.3d at 353.  The Fifth Circuit recognizes two additional, judicially-created grounds for vacating an arbitration award: (1) the arbitrator manifestly disregarded the law and (2) the award is contrary to public policy.  *See id.*  Generally, a federal court will not consider challenges to an arbitrator's findings of fact.  *See, e.g., Prescott v. Northlake Christian School*, 141 Fed. Appx. 263, 271 (5th Cir. 2005) (declining to consider "attacks on the arbitrator's interpretation of law or fact").   Indeed, where no dishonesty is involved, "the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award."  *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation and citation omitted).  Additionally, an arbitration award cannot be vacated on the ground that it was arbitrary and capricious.  *See Kergosien*, 390 F.3d at 353.

Kvaerner argues that the arbitrator's award in this case should be vacated because the arbitrator manifestly disregarded the law and exceeded his power.

## III.   <u>MANIFEST DISREGARD FOR THE LAW</u>

An arbitrator's manifest disregard of the law is an extremely narrow basis for relief and requires "more than error or misunderstanding with respect to the law.  The error must have been obvious and capable of being readily and instantly perceived by

the average person qualified to serve as an arbitrator." *Laser Vision*, 2007 WL 1430223 at *2. The arbitrator's failure to apply the law correctly does not constitute manifest disregard for the law. *See id.* The arbitrator must know and understand the clearly governing legal principle, but knowingly ignore or disregard it. *See id.* Additionally, even if it is established that the arbitrator manifestly disregarded the law, the movant must also show "that the award resulted in a significant injustice" in order to obtain relief. *See id.* (citing *Kergosien*, 390 F.3d at 355).

In its original Motion to Vacate [Doc. # 1], Kvaerner argues that the arbitrator's decision indicated a manifest disregard for the law because the arbitrator disregarded this Court's claim construction and substituted his own inconsistent construction. In its later Motion to Vacate [Doc. # 27], Kvaerner argues that the arbitrator disregarded applicable Texas contract law, American Arbitration Association ("AAA") rules, and patent law. Kvaerner has not shown that the arbitrator's decision was the result of a manifest disregard for the law or that confirming the award would result in significant injustice.

A.    **Claim Construction**

In the underlying patent litigation, this Court construed the term "spool tree" to mean "a tree having no internal valves." In the License Agreement, the parties agreed that the scope of the patent claims "shall be governed by the claim

construction decision of Judge Atlas dated May 9, 2002 . . ..”  *See* License Agreement, ¶ 10.7.  Kvaerner argues that the arbitrator's decision that its Side Valve Trees infringe the '119 Patent was in manifest disregard of the Court's claim construction.

Kvaerner argued during the arbitration that its Side Valve Trees included an "internal valve" and, therefore, did not infringe Cooper Cameron's '119 Patent.  The arbitrator clearly recognized that this Court's claim construction was binding.  *See* Hearing Transcript, Exh. K to Motion to Vacate, pp. 157, 169.  Kvaerner argued that this Court's claim construction of "spool tree" limited infringement to those devices that contained no valves anywhere within the entire tree body.  The arbitrator, noting that this Court in its full claim construction decision stressed that the '119 Patent features a horizontal tree design with no valves *in the vertical bore*,[3] rejected Kvaerner's argument and determined that "internal" valves for purposes of the Court's claim construction of "spool tree" were valves that are located inside the vertical bore.  The arbitrator then, after receiving and considering evidence from both parties, made the factual finding that Kvaerner's Side Valve Tree did not contain internal valves because it does not have valves inside the vertical bore.

---

[3]*See, e.g.,* Memorandum and Order, [Doc. # 311] in Civil Action No. H-97-0155, p. 29 n. 38; p. 34.

The arbitrator recognized and complied with his obligation to follow this Court's claim construction.  The arbitrator, based on the Court's claim construction as set forth in the entire claim construction decision, understood that a "spool tree" for purposes of the '119 Patent was a horizontal tree design with no valves in the vertical bore.  Based on the evidence in the record, the arbitrator found that Kvaerner's Side Valve Tree did not include a valve in the vertical bore and, therefore, was a "Licensed Product" for which Kvaerner owed royalties under the License Agreement.  Kvaerner has not shown that this finding was based on a manifest disregard for the law.

## B.    Texas Contract Law

Kvaerner argues that the arbitrator manifestly disregarded Texas contract law by requiring it to pay royalties based on components notwithstanding the License Agreement's definition of "Licensed Products."  Kvaerner argues that the definition of "Licensed Products" does not include components and, therefore, the License Agreement does not require payment of a royalty based on the export of components that are not patentably significant.

The License Agreement defines "Licensed Products" as "any horizontal tree assembled by or for Kvaerner . . . wherein the use, offer for sale, sale, manufacture, importation or export of the product by Kvaerner . . . in a Licensed Territory would,

whether directly or indirectly (e.g., through contribution or inducement), but for the rights and license granted herein, constitute an infringement" of a Cooper Cameron patent.  *See* License Agreement, ¶ 1.2.  The arbitrator interpreted the definition to cover horizontal trees that are shipped in components and then assembled by or for Kvaerner under circumstances that, but for the License Agreement, would constitute infringement of Cooper Cameron's patent.   That interpretation of the License Agreement is not unreasonable and does not indicate a manifest disregard for Texas contract law.

### C.   AAA Rules

Kvaerner argues that the arbitrator manifestly disregarded AAA rules, specifically Rule 46 which provides that the "arbitrator is not empowered to redetermine the merits of any claim already decided."   Kvaerner argues that the January 2005 decision was a final decision on all pending issues and the arbitrator could not later issue additional rulings.  It is clear, however, that the January 2005 decision was not a final decision because there remained issues for the arbitrator to decide following the accounting procedure phase that the January 2005 decision ordered be conducted.  Kvaerner has not shown that the arbitrator knowingly and intentionally disregarded AAA Rule 46.

**D.**   **Patent Law**

Kvaerner argues that the arbitrator demonstrated manifest disregard for United States patent law, specifically 35 U.S.C. § 271(f).  That statute provides that:

> Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(1).  Paragraph (2) of § 271(f) provides that:

> Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(2).  Section 271(f)(1) "applies to the supply abroad of all or a substantial portion of a patented invention's components [a]nd § 271(f)(2) applies to the export of even a single component if it is 'especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.'"  *Microsoft Corp. v. AT&T Corp.*, __ U.S. __, 127 S. Ct. 1746, 1760 n.18 (2007).  The statute "expands the definition of infringement

to include supplying from the United States a patented invention's components."
*Microsoft Corp.*, 127 S. Ct. at 1752.

The arbitrator specifically found that "the components necessary to complete the assembly of [Side Valve Trees] were shipped from the United States for assembly" and that, as a result, "liability under Sec. 271(f) is clear." *See* January 2007 Order, p. 9. The arbitrator found both that a substantial portion of the components needed for a completed Side Valve Tree were shipped from the United States for assembly abroad and that "Kvaerner has shipped especially made or especially adapted component parts from the United States for the production of [Side Valve Trees], with the express intent that they be combined in a foreign country." *See id.*

Although Kvaerner disagrees strongly with the arbitrator's findings, the findings fully support the arbitrator's decision under § 271(f).[4] There is no indication that the arbitrator manifestly disregarded patent law regarding 35 U.S.C. § 271(f).

### E.   <u>Significant Injustice</u>

Kvaerner has failed to show that the arbitrator's decision was based on a manifest disregard for the law. Even were Kvaerner able to make such a showing, it

---

[4]"An arbitrator's finding of fact must be accepted as true." *Apache Bohai Corp., LDC v. Texaco China BV*, 480 F.3d 397, 409 (5th Cir. 2007).

would then be required to demonstrate that upholding the arbitration award "would result in significant injustice, taking into account all the circumstances of the case, including powers of arbitrators to judge norms appropriate to the relations between parties." *Sarofim v. Trust Co. of the West*, 440 F.3d 213, 217 (5th Cir. 2006).

In this case, the Court concludes that confirmation of the arbitrator's award would not result in significant injustice. The award requires Kvaerner to pay royalties that, based on the arbitrator's findings of fact, Kvaerner was obligated to pay under the terms of the License Agreement. Upholding an award of that nature does not result in significant injustice. *See, e.g., Torch E&P Co. v. J.M. Huber Corp.*, ___ F. Supp. 2d ___, 2006 WL 3761814 *5 (S.D. Tex. Dec. 20, 2006). As a result, Kvaerner is not entitled to vacatur of the arbitration award based on an alleged manifest disregard for the law that resulted in significant injustice.

## IV.   ACTIONS BEYOND SCOPE OF ARBITRATION

An arbitration award may be vacated if the arbitrator exceeded his power. *See* 9 U.S.C. § 10(a)(4). "The test is 'whether the award, however arrived at, is rationally inferable from the contract.'" *Laser Vision*, 2007 WL 1430223 at *2 (quoting *Kergosien*, 390 F.3d at 353-54). "An award must be upheld as long as it is rationally inferable from the letter or purpose of the underlying agreement." *Id.* (internal quotation and citation omitted). "[A]ny doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration." *Id.* (quoting *Kergosien*, 390 F.3d at 355). "Moreover, the arbitrator's selection of a particular remedy is given even more deference than his reading of the underlying contract, and the remedy lies beyond the arbitrator's jurisdiction only if there is no rational way to explain the remedy as a logical means of furthering the aims of the contract." *Id.* (internal quotations, ellipses, and citation omitted).

Kvaerner argues that the arbitrator exceeded the scope of his authority by deciding issues not agreed upon by the parties, by deciding issues not covered by the License Agreement, and by deciding issues in violation of the AAA Rules.[5] Kvaerner has not shown that the arbitrator exceeded his authority in any manner.

A.     **Decision Beyond Agreed Issues Submitted By the Parties**

Kvaerner argues that the arbitrator exceeded his power by going beyond the substantive issues submitted to him by the parties. Kvaerner, citing its reply brief in the arbitration, asserts that the only issues submitted for arbitration were "(1) whether Kvaerner's new Side Valve tree design with internal valves is a 'Licensed Product'

---

[5]In the original Motion to Vacate, Kvaerner argued that the arbitrator exceeded his authority by failing to comply with the parties' contractual agreement to be bound by this Court's claim construction. As was discussed fully in connection with Kvaerner's related argument that the arbitrator manifestly disregarded the law by ignoring the Court's construction of the claim term "spool tree," the arbitrator did not exceed his authority by disregarding the Court's claim construction. Instead, while recognized the binding nature of the claim construction, the arbitrator found as a factual matter that Kvaerner's Side Valve Tree does not have internal valves and, therefore, infringed the '119 patent.

14

in light of this Court's Claim Construction Order; and (2) whether a Side Valve tree stalk shipped from the United States is a 'Licensed Product' for which a royalty is due." *See* Motion to Vacate [Doc. # 27], p. 26.   Kvaerner also stated in its Arbitration Reply Brief, however, that the resolution of these two questions would "resolve all other issues that have been briefed by the parties, e.g. did Kvaerner breach the Patent License Agreement, does Kvaerner owe a royalty to Cooper, and if so, what is the amount of the royalty owed."   *See* Kvaerner's Arbitration Reply Brief, Exh. I to Motion to Vacate, p. 1.

Initially, the Court notes that the "arbitrator's jurisdiction is defined by *both* the contract containing the arbitration clause and the submission agreement."   *See Kergosien*, 390 F.3d at 354 (emphasis added).   In this case, the License Agreement provides for arbitration of "any disputes, controversies, or differences that may arise from, under, out of or in connection with the License Agreement, including but not limited to the identity of Licensed Products."   *See* License Agreement, ¶ 10.5.   The arbitration award in this case did not exceed the arbitrator's jurisdiction, established by both the parties' submission and their agreement to arbitrate.

Additionally, Kvaerner has not shown that the arbitrator exceeded the scope of his authority as stated by the parties in their submissions and as construed by the arbitrator.   The arbitrator simply resolved the issues Kvaerner identified as having

been briefed by the parties in the arbitration, finding that Kvaerner breached the Patent License Agreement, identifying "Licensed Products" for which Kvaerner owed Cooper Cameron a royalty, and calculating the amount of that royalty.  Far from exceeding his powers to the extent that his decision is not "rationally inferable from the letter or purpose of the underlying agreement," the arbitrator decided only those issues briefed by the parties.  Kvaerner has not shown that the arbitration award should be vacated because the arbitrator exceeded the scope of the parties' submission.

### B.    Decision Beyond the Patent License Agreement

Kvaerner argues that the arbitrator exceeded the scope of his power by going beyond the terms of the License Agreement.  As is stated above, the License Agreement provides broadly for arbitration of "any disputes, controversies, or differences that may arise from, under, out of or in connection with the License Agreement, including but not limited to the identity of Licensed Products."  *See* License Agreement, ¶ 10.5.  Kvaerner argues that the arbitrator exceeded the scope of his authority by deciding that certain components are "Licensed Products" when the License Agreement's definition of "Licensed Products" does not mention components.  Kvaerner also argues that the arbitrator exceeded the scope of his authority by determining that Kvaerner engaged in infringing activity under § 271(f)

and the License Agreement defines "Licensed Products" in part based on activities that, but for the license, would constitute infringement.

Kvaerner's arguments do not indicate that the arbitrator exceeded his authority. He had express authority under the License Agreement to determine "the identity of Licensed Products."   The arbitrator also had the authority under the License Agreement to decide whether Kvaerner was in breach of the license by selling "Licensed Products" without paying the required royalty.   Kvaerner's disagreement with the arbitrator's decisions on these issues does not remove the making of these decisions from the scope of the arbitrator's authority.

Kvaerner also argues that the arbitrator exceeded the scope of his authority by awarding Cooper Cameron its costs incurred in the accounting phase when the License Agreement grants the right to conduct an audit "at Cooper [Cameron]'s expense." The License Agreement provides that Cooper Cameron, at its own expense and no more than once during any calendar year, has the right "to have an independent certified public accountant inspect the relevant records of Kvaerner . . . on thirty (30) days' notice and during regular business hours to verify the reports and payments required to be made" under the License Agreement.  *See* License Agreement, ¶ 3.9.  The arbitrator did not, however, award Cooper Cameron any costs incurred in conducting the annual audit contemplated by the License

Agreement.  Instead, the arbitrator determined that he had the authority under the AAA Arbitration Rules[6] to award Cooper Cameron its attorneys' fees and costs incurred during the accounting phase of the arbitration proceeding, and he did so.  *See* Arbitration Award, p. 13.

The arbitrator did not exceed the scope of his authority under the License Agreement, and Kvaerner is not entitled to vacatur of the arbitration award.

### C.   **Decision Beyond AAA Rules**

AAA Rule 46 provides that the "arbitrator is not empowered to redetermine the merits of any claim already decided."   Kvaerner argues that, having issued the January 2005 decision, the arbitrator violated AAA Rule 46 by conducting the accounting procedure and issuing its January 2007 decision.  Kvaerner's argument is without merit.  The arbitrator in the January 2007 decision did not "redetermine the merits of any claim already decided."   Generally, the 2005 decision addressed liability, while the 2007 decision addressed damages.  The arbitrator in the 2005 decision ordered Kvaerner to produce documents "sufficient to provide an accounting for all Side Valve Trees and components thereof . . ."  *See* January 2005 Arbitration

---

[6]The AAA rules provide that an arbitration award may include "an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."  *See* AAA Rule 43.  In this case, both Cooper Cameron and Kvaerner requested an award of fees and, therefore, AAA Rule 43 allowed the arbitrator to award them.  The AAA rules also permit the arbitrator to assess expenses of the arbitration "or any part thereof against any specified party or parties."  *See* AAA Rule 50.

Decision, Exh. B to Motion to Vacate, p. 24.  It is clear that the amount of royalties owed by Kvaerner, as well as Cooper Cameron's attorneys' fees and costs, remained as matters to be decided in the arbitration proceeding.  The arbitrator did not violate AAA Rule 46.

## V.    COOPER CAMERON'S REQUEST FOR INTEREST

Cooper Cameron requests prejudgment and post-judgment interest on the arbitration award.  Under Texas law, the prevailing party is entitled to recover prejudgment interest on the arbitrator's award.  *See Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329 (5th Cir. 1994); *Richter, S.A. v. Bank of Am. Nat'l Trust and Sav. Ass'n*, 939 F.2d 1176, 1197 (5th Cir. 1991); *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578, 583-84 (5th Cir. 1986).  "An arbitration award bears interest in the same manner as a judgment of a court of last resort in Texas." *Executone*, 26 F.3d at 1330.  Where, as here, the arbitration contract is to be construed under Texas law and does not address interest, "interest at the rate of six percent per year is allowed . . . beginning on the 30th day after the date on which the amount is due and payable." *See* TEX. FIN. CODE § 302.002.  Because the Final Arbitration Award was entered April 9, 2007, Cooper Cameron is entitled to prejudgment at the rate of six percent per annum from May 9, 2007, to date of judgment.

Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "The district court's judgment confirming an arbitral award is to have the same effect, in every respect, as in any other judgment entered by the court, and post-judgment interest is thus governed by statutory rates." *Matter of Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Imp. and Exp. Corp.*, 978 F. Supp. 266, 313 (S.D. Tex. 1997) (citing 9 U.S.C. § 14; *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 739 (N.D. Tex. 1997)). Cooper Cameron is entitled to post-judgment interest on the arbitral award at the rate of 4.95% per annum from date of judgment until paid.

## VI.   CONCLUSION AND ORDER

Kvaerner has failed to show that the arbitrator manifestly disregarded the law or that he exceeded the scope of his power. Accordingly, applying the exceedingly deferential standard of review, it is hereby

**ORDERED** that Cooper Cameron's Motion to Confirm [Doc. # 16] is **GRANTED** and Kvaerner's Motions to Vacate [Docs. # 1 and # 27] are **DENIED**. It is further

**ORDERED** that Kvaerner's Motion for Leave to File Sur-Reply [Doc. # 41] is **GRANTED**.

The Court will issue a separate final order.

SIGNED at Houston, Texas, this **26th** day of **June, 2007**.

Nancy F. Atlas
United States District Judge